UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

       Joshua Martin Charles,                              Case No. 18-10075
                                        Chapter 7

                           Debtor.

_____

       Harsh Nayyar

                         Plaintiff(s),

         v.

                                      Adv. No.  18-90020

       Joshua Martin Charles

                         Defendant(s).

_____

APPEARANCES:

JOSHUA MARTIN CHARLES, *Pro Se*
*Debtor Defendant*
79 Reynolds Lane
Woodstock, NY 12498

HARSH NAYYAR, *Pro Se*
*Plaintiff*
P.O. Box 286117
New York, NY 10128

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      Currently before the Court is the Debtor's Motion to Dismiss Harsh Nayyar's ("Nayyar")

adversary proceeding seeking relief pursuant to 11 U.S.C. §§ 523, 707, and 727.  The Court has

jurisdiction over this core matter pursuant to 28 U.S.C. § 157(a), (b)(1), (b)(2)(A), (I), and (J).

## FACTS AND PROCEDURAL HISTORY

      Below, the Court summarizes a nearly decade long landlord-tenant dispute that has

followed the Debtor into bankruptcy.  On or around December 2009, the Debtor entered into an

eighteen-month lease with Nayyar for a residence located at 41 The Ridge, Glenford, NY 12433

(the "Premises").  However, the Debtor moved out of the Premises in June 2010.  On or around

October 14, 2010, Nayyar sued in state court asserting four causes of action for breach of

contract against the Debtor.  Nayyar's state court complaint does not include any cause of action

for fraud.  (Complaint ¶ 15–19.)  Nayyar sought $39,179.55 for unpaid rent and physical damage

to the Premises.  (Complaint ¶ 21.)

In Ulster County Supreme Court, Justice Gilpatric held ten (10) days of trial over the

course of nine (9) months and heard testimony from Nayyar's nine witnesses.  Justice Gilpatric

concluded that the Debtor did not breach the contract and determined that Nayyar had

constructively evicted the Debtor by continuously entering the Premises without notice to the

Debtor.  The Supreme Court also found that:

> Mr. Nayyar's regularly repeated attempts to use his right to inspect
> the premises appears to be a ruse in order to use the premises
> telephone (which, curiously, he required remain in his name) so
> that he could call his insurance company in an apparent act of
> deceiving his own insurance company that he personally resided in
> the home and not a tenant.

(Main Case ECF No. 40 at 5) (emphasis omitted).  Additionally, the Debtor "was required to

have the police called to keep Mr. Nayyar from entering the premises." *Id.*

However, Justice Gilpatric did find the Debtor liable to Nayyar for $2,681.75, which was

comprised of $514.00 for reasonable occupancy for a two-week period in June 2010, $367.75 for

unpaid utility bills, and $1,800 for damages caused by a canine.  With statutory interest, the

Supreme Court entered judgment in Nayyar's favor for the total amount of $5,266.69 (the

"Judgment").  (Complaint ¶ 23.)  Nayyar appealed the Judgment to the Appellate Division, Third

Department, seeking an "upward modification," and continued his attempts to enforce the

Judgment in the interim.  Nayyar claims that the Supreme Court rejected his first attempt to hold

the Debtor in contempt of court due to the Debtor misrepresenting his address.  Subsequently,

2

Nayyar filed another order to show cause for contempt against the Debtor and it was returnable on January 26, 2018.

Just two days prior to the hearing on the order to show cause for contempt, the Debtor, *pro se*, filed a voluntary chapter 7 petition on January 24, 2018.  (Main Case ECF No. 1.)  On the same day, the Debtor also filed an application to waive the filing fee and, later that day, the Court waived the filing fee.[1]  According to the Debtor's petition and schedules, Nayyar is the Debtor's only creditor.  The parties' litigious behavior continued in this Court, and after motion practice and a Rule 2004 examination of the Debtor, Nayyar commenced this adversary proceeding seeking relief pursuant to 11 U.S.C. §§ 523, 707, and 727 on July 31, 2018.  The Debtor filed a Motion to Dismiss on September 14, 2018 (the "Motion").  (ECF No. 12.)  Subsequently, Nayyar filed an Amended Complaint and a Second Amended Complaint on October 4, 2018 and October 5, 2018, respectively.  The Debtor filed a response to the Second Amended Complaint and requested that the Court grant his Motion to Dismiss.  (ECF No. 27.)  With regard to the Second Amended Complaint, the Court entered an order indicating that the Second Amended Complaint is improper because Nayyar did not seek court approval prior to filing it.  After filing an appropriate application and receiving leave to amend, Nayyar filed a Third Amended Complaint on January 31, 2019 (the "Complaint").  (ECF No. 44.)  Due to the nature of the amendment, the order granting Nayyar leave also indicates that the Third Amended Complaint would not render moot the pending motion to dismiss.[2]  (ECF No. 40.)

---

[1] The Debtor indicates that at the time of the filing of the bankruptcy petition his gross monthly income was only $400.00.

[2] The unique procedural posture of this case is the result of a dual *pro se* adversary proceeding and the Court's effort to comply with the Second Circuit's directive to liberally construe *pro se* pleadings.  *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

**DISCUSSION**

I.     <u>Federal Rule of Civil Procedure 12(b)(6) Standard</u>

The Court construes the Debtor's Motion to Dismiss as a motion pursuant to Federal Rule

of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy

Procedure 7012. "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals

observed, be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679. "Where a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility of 'entitlement to relief.'" *Id.* at 678.

While a factual allegation must be accepted as true, a court is "not bound to accept as

true a legal conclusion couched as a factual allegation." *Id.*; *see also Breeden v. Bennett (In re*

*Bennett Funding Grp., Inc.)*, 367 B.R. 302, 321–22 (Bankr. N.D.N.Y. 2007) (holding that

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss"). Additionally, the Court may consider "(1) documents attached

as an exhibit to the complaint or answer, (2) documents incorporated by reference in the

complaint (and provided by the parties), (3) documents that, although not incorporated by

reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial

notice for the factual background of the case." *Planck v. Schenectady County*, 2012 U.S. Dist.

LEXIS 76241, at *17 (N.D.N.Y. June 1, 2012); *see also Stambaugh v. Stambaugh (In re*

*Stambaugh)*, 533 B.R. 449, 454 (Bankr. M.D. Pa. 2015); *Scheidelman v. Henderson (In re*

4

*Henderson)*, 423 B.R. 598, 620 (Bankr. N.D.N.Y. 2010). Courts must also be cognizant that "complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys." *Ajamian v. New York*, 2014 U.S. Dist. LEXIS 110839, at *6 (N.D.N.Y. Aug. 11, 2014) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007)). Therefore, "*Twombly* and *Iqbal* notwithstanding, this Court must . . . 'construe [a *pro se* complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Ajamian*, 2014 U.S. Dist. LEXIS 110839, at *6 (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002)).

## II.    The Complaint

The Complaint contains Twelve Causes of Action, nine of which object to discharge or dischargeability pursuant to Sections 727(a) or 523(a). In bankruptcy, denying a debtor's discharge is the death penalty. *See O'Connor v. Leone (In re Leone)*, 463 B.R. 229, 248 (Bankr. N.D.N.Y. 2011). Similarly, denying the dischargeability of a particular debt is equally drastic but limited in scope.[3] For these reasons, objections pursuant to Sections 727(a) and 523(a) must be strictly construed against the Plaintiff. *See Henderson*, 423 B.R. at 615–16. Below, the Court analyzes each of Nayyar's twelve causes of action under the framework set forth by the Supreme Court in *Iqbal* and *Twombly* while raising the strongest arguments that the Complaint suggests.

### A.  First Cause of Action - 11 U.S.C. § 523(a)(2)(A)

Nayyar's first cause of action seeks a determination that the debt owed to him is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). This Section provides:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt–
> > (2) for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained, by–

---

[3] In this unusual case, the obligation to Nayyar is the Debtor's only debt, and, therefore, the consequence of Nayyar's Section 523(a) causes of action is akin to that of a denial of discharge under Section 727(a).

> (A) false pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's . . . financial condition[.]

11 U.S.C. § 523(a)(2)(A).  In order to succeed on a cause of action under Section 523(a)(2)(A), a creditor must establish the following elements:

> (i) The debtor made a false representation;
> (ii) At the time the representation was made, the debtor knew it was false;
> (iii) The debtor made the representation with the intention of deceiving the creditor;
> (iv) The creditor justifiably relied on the representation; and
> (v) The creditor sustained loss or damage as the proximate consequence of the false, material misrepresentation.

*Chase Bank, U.S.A., N.A. v. Vanarthos (In re Vanarthos)*, 440 B.R. 67, 73 (Bankr. S.D.N.Y. 2010) (quoting *In re Giuffrida*, 302 B.R. 119, 123 (Bankr. E.D.N.Y. 2003)).

In the present case, Nayyar's Section 523(a)(2)(A) cause of action is based on two different alleged misrepresentations, one implied and one affirmative.  First, Nayyar claims that the Debtor made an implied misrepresentation by executing the lease without the intent to pay.[4] As a matter of law, a debt is not rendered nondischargeable based on an implied misrepresentation if a debtor simply fails to pay rent.  *Sparks v. King (In re King)*, 258 B.R. 786, 794 (Bankr. D. Mont. 2001) ("A debtor's simple failure to perform according to the terms of an ordinary residential lease, without more, constitutes a breach of contract but does not satisfy the creditor's weighty burden under § 523(a)(2)(A).").  To withstand a motion to dismiss, the complaint must contain additional facts regarding the Debtor's non-payment from which the Court can infer fraudulent intent, i.e., that at the time the Debtor signed the lease the Debtor had no intention to perform according to its terms.  *See Vanarthos*, 440 B.R. at 75 (holding that the complaint must allege a "sufficient factual basis on which the Court can glean circumstantial

---

[4] The complaint also alleges that the Debtor misrepresented electric meter readings and other facts regarding the condition of the Premises.  However, all of these allegations are irrelevant to determining whether the Debtor obtained the lease through fraud since these alleged misrepresentations occurred after execution of the lease.  *See Melton v. Moore (In re Moore)*, 2015 Bankr. LEXIS 1083, at *8–9 (Bankr. D. Or. 2015).

evidence of the Defendant's alleged fraudulent intent").  To draw inferences of the requisite

intent in such cases, courts generally look for allegations regarding the debtor's financial

condition at the time the debtor executed the contract.  *See Vanarthos*, 440 B.R. at 75–76;

*Colonial Nat'l Bank USA v. Leventhal (In re Leventhal)*, 194 B.R. 26, 32 (Bankr. S.D.N.Y.

1996).

In support of this implied misrepresentation claim, Nayyar makes a single factual

allegation – that the Debtor failed to pay rent and utilities "almost immediately after he occupied

the premises."[5]  (Complaint ¶ 57.)  However, Nayyar does not allege any facts regarding the

Debtor's financial condition at the time Debtor executed the lease.  For example, Nayyar does

not allege that the Debtor was unemployed or that he had large amounts of outstanding debts to

other creditors that would make performance under the lease impossible, or, at the very least,

unlikely.  For these reasons, even if the Debtor had stopped paying "almost immediately after he

occupied the premises," that, on its own, would be insufficient for the Court to conclude that the

debt is nondischargeable pursuant to Section 523(a)(2)(A).  *See Vanarthos*, 440 B.R. at 75–76;

*King*, 258 B.R. at 794.

Second, Nayyar alleges that the Debtor, prior to signing the lease, affirmatively

misrepresented that he had no pets.[6]  In support of this claim, the Court must take as true

allegations that the advertisement for the Premises indicated, "No Pets," and that the Debtor's

---

[5] In the context of a motion to dismiss, the Court may consider the Lease that Nayyar filed in the Main Case on September 13, 2018.  (Main Case ECF No. 76.)  *Stambaugh*, 533 B.R. at 454; *see also Planck*, 2012 U.S. Dist. LEXIS 76241, at *17.  In paragraph fifteen (15) of the Complaint, Nayyar alleges that he sought $13,200 for unpaid rent. Pursuant to the Lease, the monthly rent was $1,100 for eighteen months.  Therefore, Nayyar sued for $6,600 less than the total $19,800 he would have been entitled to receive under the Lease if the Debtor had made no payments.  From his $13,200 demand, the Court infers that Nayyar received a total of $6,600 from the Debtor, the equivalent of six (6) monthly payments pursuant to the Lease and wholly undercuts Nayyar's allegation that the Debtor stopped paying rent "almost immediately after he occupied the premises."  (Complaint ¶ 57.)  This conclusion is consistent with the Supreme Court's decision that states the Debtor paid a sum sufficient to pay for rent from December 2009 through May 2010.
[6] When Nayyar asked if "they had any pets, Joshua Charles and Cristina Charles answered 'No.'"  (Complaint ¶ 58.)

dog caused damage to the Premises.  However, Nayyar does not allege that the Lease contained a

provision prohibiting pets.[7]  Additionally, Nayyar does not claim he would not have entered into

the lease with the Debtor if the Debtor had a pet.  *See Melton*, 2015 Bankr. LEXIS 1083, at *7–8.

Without more, the content of an advertisement does not create the requisite causal connection

between the alleged misrepresentation and the damages claimed.  *See Rescuecom Corp. v.*

*Khafaga (In re Khafaga)*, 419 B.R. 539, 548 (Bankr. E.D.N.Y. 2009) (holding that a complaint

did not plead the justifiable reliance element of a Section 523(a)(2)(A) cause of action where the

complaint lacked factual allegations establishing a causal connection between the

misrepresentation and the damages).  For all of these reasons, even if the Debtor had

misrepresented whether he had pets, the Court could still not conclude that the debt is

nondischargeable pursuant to Section 523(a)(2)(A) and, thus, the First Cause of Action is

dismissed.

### B.  Second Cause of Action - 11 U.S.C. § 523(a)(6)

Nayyar's next cause of action seeks a determination that damage caused to the Premises is

nondischargeable pursuant to Section 523(a)(6).

> Bankruptcy Code § 523(a)(6) excepts from discharge debts for
> willful and malicious injury by the debtor to another entity or to
> the property of another entity. 11 U.S.C. § 523(a)(6). The
> 'willfulness' element requires a plaintiff to prove 'a deliberate and
> intentional injury, not merely a deliberate or intentional act that
> leads to injury.' Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct.
> 974, 140 L. Ed. 2d 90 (1998). The 'maliciousness' element
> requires that a plaintiff further prove that said injury was 'wrongful
> and without just excuse, even in the absence of personal hatred,
> spite or ill-will.' In re Stelluti, 94 F.3d 84, 88 (2d Cir. 1996).

---

[7] Paragraph thirty-five (35) of the Lease contains a handwritten provision, initialed by Nayyar and the Debtor, that states, "Tenant(s) will pay for any damage done to house, carpets, garage or yard, including stains and odors done by any pets, cats or dogs." This handwritten provision undermines Nayyar's argument since it appears that Nayyar was aware that the Debtor had pets or, at the very least, might have pets at the Premises.

*Estate of Rossi v. Morse (In re Morse)*, 2018 Bankr. LEXIS 2208, at *23 (Bankr. N.D.N.Y. July 26, 2018).  However, negligently or recklessly inflicted injuries are not excepted from discharge pursuant to Section 523(a)(6).  *See Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

Specifically, Nayyar alleges that the Debtor damaged the cedar siding on his home by pressure washing the Premises' exterior using the wrong pressure washer tip.[8]  Additionally, paragraph sixty-eight (68) of the Complaint further provides that:

> Debtor left the house in an awful condition: holes in the walls, plastic stars stuck to the loft ceiling, dog scratches on doors, windows and floor, washing machine actuator missing, wood stove parts broken by mishandling of top cover, lock on sliding door broken by jamming, screen ripped.  Plaintiff had to do extensive repairs that took six months to make the house operable again for re-renting.

Although the allegations regarding physical damage to the Premises are extensive, the damage is not of the nature that the Court can reasonably draw an inference of willful and malicious intent solely from the damage allegations.

On the element of intent, Nayyar only pleads that the Debtor hated him and that is why the Debtor damaged the Premises.  (Complaint ¶ 71–72.)  Courts have consistently held that "hate" allegations are conclusory and are not sufficient to defeat motions to dismiss.  *See Ajamian*, 2014 U.S. Dist. LEXIS 110839, at *14; *Amaker v. Haponik*, 1999 U.S. Dist. LEXIS 1568, at *11 (S.D.N.Y. Feb. 15, 1999).  Moreover, Nayyar does not allege any facts to establish that the Debtor hated Nayyar prior to allegedly damaging the property.  Therefore, the Court cannot infer that the Debtor damaged the property with the requisite willful and malicious

---

[8] Nayyar concedes that at least some of the damage was the result of negligent and/or reckless behavior. In paragraph sixty-seven (67), Nayyar states that the Debtor "was indifferent, reckless, flagrant.  It was gross negligence with malicious intent."

intent.[9]  *See Norm Gershman's Things to Wear, Inc. v. Peterson (In re Peterson)*, 332 B.R. 678,

686–87 (Bankr. D. Del. 2005); *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 725 (Bankr.

N.D. Ill. 2002) (considering lack of evidence that the debtor damaged the premises following,

and as a result of, a deterioration of the landlord-tenant relationship).  Without more, the damage

allegations in this case are simply consistent with ordinary wear and tear or, at most, negligent

conduct.  *See Peterson*, 332 B.R.at 687 ("The conduct in this case may be negligent or even

reckless but it is not willful and malicious."); *Keeter v. Naranjo (In re Naranjo)*, 349 B.R. 304,

306 (Bankr. M.D. Fla. 2006); *Lilledahl v. Kibbee (In re Kibbee)*, 287 B.R. 239, 244 (Bankr. E.D.

Mo. 2002); *Lazzara*, 287 B.R. at 725.  For all of these reasons, Nayyar does not plead a plausible

claim pursuant to Section 523(a)(6) and, therefore, the Second Cause of Action is dismissed.

### C.  Third Cause of Action - 11 U.S.C. § 707(a)(1)

Pursuant to Section 707(a)(1), the Court may dismiss a chapter 7 case for "unreasonable

delay by the debtor that is prejudicial to creditors."  The Complaint[10] seeks to dismiss the

Debtor's case due to the delay the Debtor caused by necessitating multiple Section 341 meetings,

forcing the Chapter 7 Trustee to file a Motion for Turnover, and failing to resolve lingering

issues from a Rule 2004 examination conducting in May 2018.  However, Nayyar omits that the

Chapter 7 Trustee closed the Section 341 Meeting of Creditors, withdrew the Motion for

Turnover the day after he filed it, and filed a Report of No Distribution six days prior to

---

[9] Paragraphs 69–71 of the Complaint contain conclusory statements regarding the Debtor's alleged disdain for
Nayyar.  In particular, Nayyar alleges that, at some point in time after he commenced the state court action against
the Debtor, Nayyar's own attorney said that the Debtor's "defence (sic) was going to be that Plaintiff is different,
that he is a foreigner and not an American."  While the Court views this as a conclusory allegation rather than a
factual allegation, even if it were construed to be factual, it would have little to no relevance because how the Debtor
felt about Nayyar after litigation was commenced does not lend itself to an inference that a year or more prior to that
the Debtor also hated Nayyar.

[10] Pursuant to FRBP 1017(f)(1), Nayyar did not need to commence an adversary proceeding to dismiss this case
under Section 707(a)(1).  Instead, he could have made a motion to dismiss.  In fact, this adversary proceeding is
duplicative since Nayyar previously moved to dismiss the case, the Court entered an order denying the motion to
dismiss, and Nayyar moved to reconsider the order denying dismissal.

Nayyar's commencement of this adversary proceeding.  *See In re Aiello*, 428 B.R. 296, 300

(Bankr. E.D.N.Y. 2010) ("Notwithstanding Sysco's claim that Debtor's delay impeded

administration of the case, the Chapter 7 Trustee was able to fulfill his duties and submit the

report of no distribution of assets before Sysco filed its Motion.").  But for this Adversary

Proceeding, the Debtor would have received his discharge in the ordinary course during August

2018.  For these reasons, the Court does not find cause to dismiss the Debtor's case.

### D.  Fourth Cause of Action - 11 U.S.C. § 727(a)(2)(A)–(B)

Pursuant to Section 727(a)(2)(A)–(B), a court shall not grant a discharge if

> the debtor, with intent to hinder, delay, or defraud a creditor or an
> officer of the estate charged with custody of property under this
> title, has transferred, removed, destroyed, mutilated, or concealed,
> . . .
>
>> (A) property of the debtor, within one year before the date of the filing of
>> the petition; or
>>
>> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A)–(B).  Pursuant to Section 727(a)(2)(A), the bad act must have occurred

within the one-year period preceding the filing of the petition.  Nayyar has not alleged any

prepetition act, and, therefore, the Section 727(a)(2)(A) action must be dismissed.

However, Nayyar's Section 727(a)(2)(B) allegations are not similarly time barred as that

section requires that "[t]he transfer or concealment of estate property must occur after the

petition date."  *Symonies v. Sobol (In re Sobol)*, 545 B.R. 477, 496 (Bankr. M.D. Pa. 2016).  "To

prevail under § 727(a)(2)(B), the party objecting to discharge must demonstrate by a

preponderance of the evidence that: '(1) the debtor, (2) transferred or concealed (3) property of

the bankruptcy estate (4) with the intent to hinder, delay or defraud the creditor (5) after the

filing of the bankruptcy petition.'" *Leone*, 463 B.R. at 242–43 (quoting *In re Pisculli*, 408 Fed. Appx. 477, 479 (2d Cir. 2011)).

Nayyar's allegations on this cause of action center around what the Debtor did or did not do with certain documents and records. Implicit in this position is that the "property of the estate" which the Debtor allegedly concealed, destroyed, or mutilated consists of financial documents, such as tax returns, bank records, and income and expense records. The Court has been unable to find, and Nayyar does offer, any case law that construes "property of the estate" within 727(a)(2)(B) to include the financial documents involved in this case. Instead, this Court believes that the "property" contemplated by this statute consists of assets of the kind that may, depending on their value, be administered by a Chapter 7 Trustee. In this case, bank statements and tax returns are not assets which can be sold at auction and, thus, the Fourth Cause of Action is dismissed. However, the Court will analyze these allegations as part of Nayyar's Section 727(a)(3) cause of action.

### E. Fifth Cause of Action - 11 U.S.C. § 727(a)(3)

Pursuant to Section 727(a)(3), a Court shall deny a discharge when:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). However, "[t]he Bankruptcy Code does not specifically require . . . an impeccable system of bookkeeping." *Cadle Co. v. Jacobowitz (In re Jacobowitz)*, 296 B.R. 666, 670 (Bankr. S.D.N.Y. 2003), *aff'd*, 309 B.R. 429 (S.D.N.Y. 2004). Rather, when an objection under § 727(a)(3) is raised, the court must determine "whether a debtor's records are adequate to explain his finances and, if not, whether this failure is justified." *Leone*, 463 B.R. at 244.

In the present case, Nayyar alleges that the Debtor's discharge should be denied pursuant to Section 727(a)(3) because he failed to provide copies of his (1) tax returns for 2014, 2015, and 2017, and his "partner's tax returns," (2) lease for the apartment he rented at the time he filed the petition, and (3) employment records and income and expense records.

First, the Court must take as true Nayyar's allegations that the Debtor did not provide him with copies of tax returns for tax years 2014, 2015, and 2017, as well as copies of returns for his partner.  However, the Debtor is only statutorily required to provide to the Chapter 7 Trustee and creditors a copy of his federal tax return "for the most recent tax year ending immediately before commencement of the case *and for which* a Federal income tax return was filed."  11 U.S.C. § 521(e)(2)(A)(i) (emphasis added).  Pursuant to the plain language of the statute, the Debtor only needs to provide a copy of a tax return for one tax year.  *See In re Jeffery*, 2018 Bankr. LEXIS 945, at *21–22 (Bankr. E.D. Pa. March 29, 2018) ("There is only one tax return to which all subsections of § 521(e)(2) apply and that tax return is identified in subsection (e)(2)(A)(i).").  In paragraph 108 of the Complaint, Nayyar concedes that the Debtor provided him with the 2016 tax return and, based on the Chapter 7 Trustee's actions, the Court infers that this is the one and only tax return the Bankruptcy Code requires to be disclosed.[11]  Additionally, Nayyar has not provided the Court with any authority that requires the Debtor produce his "partner's" tax returns.  For these reasons, Nayyar's allegations regarding the Debtor's failure to produce various tax returns cannot form the basis of a plausible claim under Section 727(a)(3).

---

[11] Even if the Debtor had not produced a necessary tax return, courts have held such allegations to be insufficient to state a plausible claim for relief pursuant to Section 727(a)(3).  *See Murray v. Altendorf (In re Altendorf)*, 2015 Bankr. LEXIS 2517, at *22–23 (Bankr. D.N.D. July 29, 2015) (granting a motion to dismiss because "[f]ailing to file a tax return or to produce it during discovery in an adversary proceeding, without more, does not rise to the level of concealing or destroying financial documents under the circumstances of this case").

Second, Nayyar alleges that the Debtor has not provided him with a copy of the lease for the apartment in which the Debtor lived at the time this bankruptcy case was filed.  Nayyar claims that if the Debtor does not produce the lease, Nayyar cannot verify whether the Debtor paid his landlord more than the $500 security deposit disclosed in the Petition.  Nayyar's argument appears to be that this may permit the Debtor to shield a larger security deposit from administration in the bankruptcy case.  Nayyar is mistaken because, under New York law, the Debtor does not have a possessory interest in the security deposit until the completion of the lease.  N.Y. Gen. Oblig. 7-103 (security deposits for the rental or use of real property shall be held in trust by the landlord).   Therefore, the Chapter 7 Trustee does not have a possessory interest in the security deposit and may not administer the security deposit, regardless of its amount, for the benefit of unsecured creditors.  *See French v. Johnson (In re Coomer)*, 375 B.R. 800, 808 (Bankr. N.D. Ohio 2007); cited favorably by *Lawrence v. Commonwealth of Ky. Transp. Cabinet (In re Shelbyville Rd. Shoppes, LLC)*, 775 F.3d 789, 793–95 (6th Cir. 2015) ("Here, the deposit is not part of the debtor's bankruptcy estate because at the time the debtor filed a voluntary petition for Chapter 7 relief, the debtor had no 'present right' to possess the deposit, and thus no legal or equitable interest in it."); *Weinman v. Graves (In re Graves)*, 609 F.3d 1153, 1158 (10th Cir. 2010).  Therefore, the Lease is not relevant to ascertain the Debtor's financial condition.

Third, Nayyar vaguely alleges that the Debtor has not produced "employment records" and "income and expense records."  (Complaint ¶ 109.)  Nayyar does not allege what specific records he is referring to and does not allege how the failure to produce these records prevents him from ascertaining the Debtor's condition.  Even while drawing inferences from the vague categories of "employment records" and "income and expense records" in Nayyar's favor, the

information contained within these categories of records would be generally ascertainable from

the Debtor's 2016 tax return.  Indeed, the Chapter 7 Trustee was satisfied with the

documentation provided by the Debtor and filed a report of no distribution on July 25, 2018.[12]

*See Berger & Assocs. Attys., P.C. v. Kran (In re Kran)*, 760 F.3d 206, 210–11 (2d Cir. 2014)

(considering the filing of a Chapter 7 Trustee's report as evidence that the debtor provided

sufficient documentation from which a creditor could ascertain the debtor's financial condition);

*O'Hearn v. Gormally (In re Gormally)*, 550 B.R. 27, 51 fn.20 (Bankr. S.D.N.Y. 2016) (same);

*Cottini v. Blanchard (In re Blanchard)*, 516 B.R. 11, 18 (Bankr. N.D.N.Y. 2014) (same).[13]  For

all of these reasons, Nayyar does not state a plausible claim for relief pursuant to Section

727(a)(3) even if all of the above referenced factual allegations are true.

### F.  Sixth Cause of Action - 11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless

. . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false

oath or account."  11 U.S.C. § 727(a)(4)(A).  To succeed on this cause of action, a plaintiff must

establish: "(1) the debtor made a statement under oath, (2) such statement was false, (3) the

debtor knew it was false, (4) the statement was made with fraudulent intent, and (5) the statement

related materially to the bankruptcy."  *Leone*, 463 B.R. at 245.

In the present case, Nayyar alleges that the Debtor made dozens of false oaths or

omissions.  However, many of the allegedly false oaths or omissions cannot form the basis of

this cause of action because they are not sworn to or were not made in connection with this

---

[12] In his report, the Chapter 7 Trustee states, "that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law."

[13] On August 15, 2018, the Debtor filed a letter containing a copy of his 2016 W-2 tax form.  (Main Case ECF No. 67.)

case.[14]  Additionally, several other allegations simply do not fall within the scope of Section

727(a)(4)(A).  For example, allegations that the Debtor did not disclose that he has a future

interest as an heir in his mother's estate are irrelevant.  There is no case law support for the

notion that a "future interest" includes the chance that, one day in the future, a debtor might

inherit money from a person that is still living at the time of the filing of the bankruptcy petition.

*C.f. Bakst v. Reis (In re Reis)*, 372 B.R. 521, 525 (Bankr. S.D. Fla. 2007) (denying discharge

where debtor lied about whether his father was still alive).  Additionally, the Code specifically

provides which "unexpected" post-petition inheritances become property of the estate.  *See* 11

U.S.C. § 541(a)(5).  Although a number of allegations remain, Nayyar's 727(a)(4)(A) cause of

action must be dismissed as the allegations fail to plausibly plead the elements of intent and/or

materiality.

First, Nayyar's complaint fails to allege any facts from which the Court can infer the

allegedly false oaths were made with the requisite fraudulent intent.  The Complaint merely lists

the oaths and/or omissions and, in a conclusory fashion, alleges that the Debtor made them

knowingly and fraudulently.  While it is true that a court may infer fraudulent intent from a series

of errors or omissions in a petition and schedules, the allegedly false oaths in this case do not rise

to that level of reckless disregard.  *C.f. Harrington v. Beaudry (In re Beaudry)*, 549 B.R. 576,

585 (Bankr. N.D.N.Y. 2016) ("The element of fraudulent intent may be established by . . .

reckless disregard for the truth.") (quotations omitted).  Instead, the allegedly false oaths and

omissions are consistent with "carelessness or ignorance" and do not support an inference of

fraudulent intent.  *Id.*  For example, even if Nayyar's allegation that one of the Debtor's pre-

---

[14] The allegations contained within paragraphs 138 – 144 regard statements the Debtor did not make under oath.
Further, the allegations contained within paragraphs 160 – 166 regard statements the Debtor allegedly made in the
course of the state court proceeding before the Debtor commenced this bankruptcy case, and, therefore, are not false
oaths within the scope of Section 727(a)(4)(A).

petition leases was for a term of six months instead of seven months is true, the Court cannot

infer fraudulent intent without additional allegations as to why the Debtor would have

misrepresented his lease term by one month.[15]  (Complaint ¶ 146.)  Similarly, Nayyar does not

allege facts from which the Court could infer that the Debtor fraudulently omitted where he lived

for the period of January 22, 2015 to May 3, 2016.  (Complaint ¶ 129.)  Nayyar has not provided

the Court with a reason why the Debtor would, as it relates to the administration of his

bankruptcy case, fraudulently omit this information.  *Leone*, 463 B.R. at 245 (explaining that

"the issue is not whether the Debtors' petition and schedules contained inaccuracies, but whether

the Debtors intended to deceive or mislead creditors").

Second, Nayyar's complaint fails to plausibly plead facts regarding the materiality of the

oaths and/or omissions.  "Materiality is found if the false oath is related to the debtor's business

transactions, concerns the discovery of assets, business dealings, or the existence or disposition

of the debtor's property."  *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr.

S.D.N.Y. 2008).  Similarly, "[o]missions are material if they impact the trustee's ability to

discover other assets, fully investigate pre-bankruptcy dealings, financial condition, and

discovery of preference or avoidance actions."  *Id.*  The allegations include that the Debtor (1)

indicated state court litigation had concluded even though it was on appeal, (2) falsely indicated

he did not expect any increase or decrease in expenses within one year after file petition even

though he planned on moving in with his mother in a few months, (3) omitted and/or

---

[15] Nayyar also alleges various inconsistencies between the Debtor's address information on the Statement of Financial Affairs and the Debtor's testimony at the Rule 2004 examination.  The Court takes notice of the transcript of the Rule 2004 exam filed as an exhibit to Nayyar's Motion to Reconsider in the Main Case (Main Case ECF No. 73, hereinafter referred to as "Rule 2004 Transcript").  From colloquies with the Court at the Rule 2004 examination, it is clear that Nayyar's interest in the Debtor's address history is driven by Nayyar's contempt motion in state court.  (Rule 2004 Transcript 56:20–59:24; 67:24–68:4).  It appears that Nayyar is attempting to use the bankruptcy process to prosecute his contempt motion in the future regardless of the disposition of the bankruptcy case.  (Rule 2004 Transcript 68:22–71:13; 82:12–19).

misrepresented certain address information on the Statement of Financial Affairs, and (4) stated

at his Section 341 meeting that he made no transfers of property for 6 years prior to filing despite

having transferred his car in 2015.

These oaths and omissions are not material since they have no bearing on the discovery

of assets, business dealings, or the existence or disposition of the Debtor's property.[16]

Additionally, as discussed above, the fact that the Chapter 7 Trustee filed a Report of No

Distribution further supports the conclusion that any false oaths or omissions are immaterial.  *See*

*O'Connor v. Ross (In re Ross)*, 2018 Bankr. LEXIS 1682, at *12 (Bankr. N.D. Ind. Apr. 10,

2018) ("Ross's bankruptcy trustee knew of this property and still filed a report of no distribution.

The trustee's actions here strongly indicate that even if Ross originally included the property on

his schedules, it would have made no difference to the administration of his bankruptcy estate.");

*R.K. Hoover Commer. Contr., Inc. v. Clement (In re Clement)*, 2016 Bankr. LEXIS 3587, at

*14–15 (Bankr. W.D. Wash. Sep. 30, 2016); *Al-Naji v. Al-Naji (In re Al-Naji)*, 521 B.R. 65, 69

(Bankr. W.D.N.Y. 2014).  For all of these reasons, the Sixth Cause of Action is dismissed.

### G.  Seventh Cause of Action - 11 U.S.C. § 727(a)(5)

Section 727(a)(5) states that "[t]he court shall grant the debtor a discharge, unless . . . the

debtor has failed to explain satisfactorily, before determination of denial of discharge under this

paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. §

727(a)(5).  The Second Circuit has explained that, "[i]n order to obtain a denial of discharge

under § 727(a)(5), first, the creditor must establish a loss or deficiency of assets."  *D.A.N. Joint*

*Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 238 (2d Cir. 2006).  "Nonetheless, a plaintiff

---

[16] The transfer of the car is not material as the car is thirteen years old, has nearly 300,000 miles on it (Rule 2004 Transcript 27:4–27:7), and was transferred more than a year prior to the filing of this bankruptcy case.  *See* 11 U.S.C. § 727(a)(2)(B).

cannot merely allege a general lack of assets and must show the disappearance of specific assets

previously in the possession of the debtor." *In re Ijbara*, 2015 Bankr. LEXIS 1251, at *16

(Bankr. D.N.J. Apr. 10, 2015) (citing *In re Colodner*, 147 B.R. 90, 94 (Bankr. S.D.N.Y. 1992)

(granting a motion to dismiss where "[t]he complaint fail[ed] to specify any assets belonging to

the debtor which were either lost or which were diminished and for which the debtor has failed

to give a satisfactory explanation").

In this case, Nayyar's allegations do not identify specific assets which the Debtor

previously owned but are not available for creditors.  Instead, Nayyar alleges, in conclusory

fashion, that the "Debtor has failed to explain why he was unable to pay the Judgment for the

three years afterwards."  (Complaint ¶ 173.)  More specifically, Nayyar alleges that the Debtor

received a $6,491.00 tax refund for tax year 2016.  (Complaint ¶ 177.)  The fact that the Debtor

received but no longer has the refund is not sufficient to allege a loss of assets within the

meaning of the statute.  With regard to tax years 2014, 2015, and 2017, Nayyar fails to identify

any refunds that the Debtor received.  Indeed, even drawing all inferences in favor of Nayyar, the

Complaint's allegations are consistent with the possibility that the Debtor simply used the refund

to meet various household expenses in the ordinary course.  *Iqbal*, 556 U.S. at 678; *see also*

*Duree v. Dunn (In re Dunn)*, 2014 Bankr. LEXIS 1793, at *18–19 (Bankr. E.D. Ky. Apr. 22,

2014) ("A 'recitation solely of facts that are indicative of misconduct are insufficient to state a

facially plausible claim, if they are equally consistent with lawful behavior.'") (citing *Twombly*,

550 U.S. at 554, 557).   Therefore, the Seventh Cause of Action is dismissed.

**H.  Eighth Cause of Action - 11 U.S.C. § 727(a)(6)(A)**

Section 727(a)(6)(A) provides that "the court shall grant the debtor a discharge,

unless . . . the debtor has refused, in the case . . . to obey any lawful order of the court, other than

an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). "Given the

plain language of the statute that debtor 'refuse' to obey a court order, 'mere failure' is

insufficient to justify the harsh sanction of denial of a discharge imposed by § 727." *Henderson*,

423 B.R. at 620. "Consequently, discharge should only be denied where the debtor's

noncompliance with a court order was a result of willful, intentional disobedience or dereliction

rather than mere inadvertence or mistake." *Id.*

Nayyar alleges that the Debtor failed to obey a number of the Court's directives from a

Rule 2004 examination. Nayyar made the same allegations in a separate contempt motion in the

Main Case. The Court denied both the underlying motion and the motion to reconsider its

decision on the contempt motion. As set forth in the decision denying the motion to reconsider,

the exchanges at the Rule 2004 examination cited by Nayyar do not amount to orders upon

which the Court could make a finding of contempt, much less a denial of discharge pursuant to

Section 727(a)(6)(A). *See Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 333 (2d

Cir. 1999) ("The bankruptcy court [is] in the best position to interpret its own orders.")

(quotations omitted). First, the colloquies between the parties and the court regarding document

production are not court orders, but rather summaries of agreements between the parties.[17] *See*

*In re Tucci*, 81 B.R. 320, 323 (Bankr. E.D. Pa. 1988). Second, even if there were instances

where an exchange could be construed as a court order, such an order would not be sufficiently

clear and unambiguous to form the basis for this cause of action. *See Adar 980 Realty LLC v.*

*Sofer (In re Sofer)*, 519 B.R. 28, 35 (Bankr. E.D.N.Y. 2014); *United States Tr. v. Arnold (In re*

---

[17] At the hearing on Nayyar's motion to hold the Debtor in contempt held on August 15, 2018, Nayyar argued that the Court, during the Rule 2004 examination, ordered the Debtor to produce numerous documents. The Court clarified that the Debtor was not under any order to produce documents and indicated that, moving forward, the Debtor only needs to produce a copy of his 2016 tax return and return the Rule 2004 Transcript to Nayyar. Nayyar concedes that the Debtor has provided him with both the 2016 tax return and the Rule 2004 Transcript.

*Arnold)*, 369 B.R. 266, 273 (Bankr. W.D. Va. 2007) ("Whether a violation of a court order

warrants a denial of discharge is a matter within the trial court's discretion.").  Indeed, the Court

never entered an order directing the Debtor to produce any documentation or information to

Nayyar.  For all of these reasons, the Eighth Cause of Action is dismissed.

## I.   Ninth Cause of Action - 11 U.S.C. § 727(a)(7)

Section 727(a)(7) provides that a discharge shall be denied if "the debtor has committed

any act specified in paragraph (2), (3), (4), (5), or (6) of [section 727], on or within one year

before the date of the filing of the petition, or during the case, ***in connection with another case***,

***under this title*** or under the Bankruptcy Act, concerning an insider."  11 U.S.C. § 727(a)(7)

(emphasis added).  The plain language of the statute requires the bad act to have been committed

in connection with another bankruptcy case.  *Hirsch v. Hirsch (In re Hirsch)*, 2009 Bankr.

LEXIS 3303, at *22 (Bankr. E.D.N.Y. Oct. 13, 2009); *Citik Ka Wah Bank Ltd. v. Wong (In re

Wong)*, 291 B.R. 266, 282 (Bankr. S.D.N.Y. 2003).  Nayyar has not alleged that any other related

bankruptcy case exists, and the Court is unaware of any such case.  Therefore, the Ninth Cause

of Action must be dismissed.  *Wong*, 291 B.R. at 282 (dismissing a Section 727(a)(7) cause of

action where a complaint "does not even mention a related bankruptcy case").

## J.   Tenth Cause of Action - 11 U.S.C. § 727(a)(11)

Pursuant to Section 727(a)(11), the Court may deny a debtor a discharge if "the debtor

failed to complete an instructional course concerning personal financial management described

in section 111 . . . ."  Federal Rule of Bankruptcy Procedure 1007(b)(7) requires that a Debtor

complete a course in personal financial management and file a certificate of completion of the

course within sixty-days of the first scheduled meeting of creditors.  In this case, the deadline to

file the certificate was April 17, 2018 and the Debtor did not file the certificate until August 3,

2018.  Pursuant to Rule 1007(c), the Court "may, at any time and in its discretion, enlarge the time to file . . ." the financial management certificate.  In this Court's Memorandum–Decision and Order denying Nayyar's Motion to Reconsider, the Court, *sua sponte*, granted an extension pursuant to FRBP 1007(c) such that the certificate is now timely filed with the Court.  As a general matter, the Court routinely extends the time to file financial management certificates in other cases.  Therefore, the Tenth Cause of Action is dismissed.

### K.  Eleventh Cause of Action - 11 U.S.C. § 727(b)

Section 727(b) provides:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

This Section establishes the scope of a chapter 7 discharge and is not an independent ground upon which the Court may deny a discharge.  Therefore, the Eleventh Cause of Action is dismissed.

### L.  Twelfth Cause of Action - 11 U.S.C. § 727(c)(1)

Section 727(c)(1) states, "The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section."  This Section merely provides the mechanism by which a creditor may object to a chapter 7 debtor's discharge and is not an independent ground upon which the Court may deny a discharge.  Therefore, this cause of action is dismissed.

22

III.   <u>Leave to Amend</u>

The Court is cognizant that leave to amend should be freely granted and that, after granting a motion to dismiss, courts often grant the Plaintiff leave to amend.  Fed. R. Bankr. Proc. 7015.  However, "an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend."  *Planck*, 2012 U.S. Dist. LEXIS 76241, at *24, fn. 13 (citing numerous cases from the Northern District of New York).  Moreover, the Second Circuit has held, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d. Cir. 1993).  "This rule applies even to *pro se* plaintiffs."  *Planck*, 2012 U.S. Dist. LEXIS 76241, at *24.

While the Complaint is lengthy and contains two hundred fifteen paragraphs, the Court finds it is appropriate to deny Nayyar leave to amend for two reasons.  First, Nayyar has already properly amended his Complaint two times over the course of four months.  Second, and more importantly, this Complaint is substantively deficient as this Adversary Proceeding stems from a landlord-tenant dispute with a long and tortured history in state court.  Even when coupled with the record in the Main Case, Nayyar's narrative of the underlying landlord-tenant transaction simply does not sound in Section 523(a)(2) fraud or Section 523(a)(6) willful and malicious injury.  Instead, at worst, Nayyar's allegations make clear that the parties entered into a lease which they both surely regret.  Similarly, the allegations regarding Section 727(a) simply cannot, however alleged, rise to the level that warrants the death penalty in bankruptcy.  Amending the Complaint would, in the Second Circuit's terms, be unlikely to be productive since Nayyar's efforts seem calculated to help himself prosecute a motion for contempt in state court rather than to uncover material misrepresentations or assets available for administration by the Chapter 7

23

Trustee.  (Rule 2004 Transcript 56:20–59:24; 67:24–68:4, 68:22–71:13; 82:12–19).  For all of these reasons, Nayyar is denied leave to amend the Complaint.

## CONCLUSION

For all of the foregoing reasons, the Debtor's Motion to Dismiss is granted and this Complaint is dismissed in its entirety with prejudice and without leave to amend.

It is SO ORDERED.

Dated: April 15, 2019                                    /s/ Robert E. Littlefield, Jr.
      Albany, New York                          Robert E. Littlefield, Jr.
                                     United States Bankruptcy Judge